STEPHEN J. WINDHORST, Judge.
| ¡¡Plaintiff, James A. Price, filed suit for damages after the vehicle he was driving was struck by an ambulance. After a bench trial, the court rendered judgment in favor of defendants, Antoinette M. Valenti and Jefferson Parish Hospital Service No. 2, dismissing plaintiffs claims with prejudice.[1] In its judgment, the court states that
The Court finds that the applicable standard of care in this case is “reckless disregard” or gross negligence. Plaintiff failed to prove by a preponderance of the evidence that Defendant, Antoinette M. Valenti, acted with reckless disregard or gross negligence in connection with the accident occurring on or about June 28, 2011.
On appeal, Mr. Price contends that the trial court applied an improper standard of care to defendant’s actions by requiring that he prove that defendant acted with reckless disregard or gross negligence. Mr. Price further contends that |sthe trial court erred in finding that he did not prove “reckless disregard” or “gross negligence.” For the following reasons, we affirm the decision of the trial court.
The following facts were adduced at trial. On June 28, 2011 at approximately 11:00 A.M., Mr. Price was driving northbound on Clearview Parkway when his truck was struck by an ambulance driven by defendant, Antoinette Valenti. Ms. Valenti is a certified Emergency Medical Technician (EMT), employed by East Jefferson Emergency Medical Services. At the time of the accident, Ms. Valenti and her partner, David Maddox, were responding to a 911 call.
Ms. Valenti testified that, after receiving the 911 call, she drove the ambulance westbound on West Napoleon Avenue. She engaged both the flashing lights and the siren on the ambulance. She was proceeding in the left lane, and there was one *123 car in front of her, who moved to the right lane as she approached. Immediately pri- or to arriving at the intersection of West Napoleon Avenue and Clearview Parkway, the traffic lights changed, so that she had the red light as she approached Clearview Parkway. She stopped at the intersection, and saw that the traffic on Clearview Parkway was not moving. She crossed the right hand lane, looked both ways again, and crossed the middle lane. She then slowly proceeded into the left hand lane, and half way through that lane she ran into Mr. Price’s truck.
Ms. Valenti stated that she was traveling at a rate of about 5 miles per hour crossing Clearview Parkway. She observed a car in the far right lane and an 18-wheeler truck in the center lane of Clearview Parkway, but she did not see any vehicle prior to entering the left lane. She also testified that her view was not blocked by the 18-wheeler and that she could see farther down Clearview Parkway.
| ¿The testimony of David Maddox, the paramedic with Ms. Valenti at the time of the accident, was substantially similar to that of Ms. Valenti. He also was looking to see if it was safe to enter the intersections. Mr. Maddox stated that Mr. Price’s truck “came up from nowhere” and that it did not yield whatsoever to the ambulance, despite the siren and flashing lights.
Mr. Price testified that he was travelling 30 to 35 miles per hour, proceeding north in the left lane of Clearview Parkway as he approached the intersection of Clearview and West Napoleon Avenue. He glanced at the stop light, saw that it was green and then looked down. He then felt the impact as the ambulance hit the passenger side of his truck. Mr. Price stated that he did not hear the siren or see the lights prior to impact, and that he could not see the ambulance because of the 18-wheeler in the center lane. Mr. Price acknowledged that he saw that the other cars on Clearview Parkway were not moving, but he did not “think anything of it.”
Trooper Leander Journee investigated the accident. When he arrived at the scene, the ambulance lights and siren were still engaged. Trooper Journee issued a citation to Ms. Valenti for failure to yield.
Two eyewitnesses to the accident also testified at trial. Cynthia Fitzsimons testified that she was in a car travelling on Clearview Parkway in the right lane. The car stopped at the red light at the intersection of West Napoleon Avenue. She heard the siren and then the light turned green. They remained stopped even though the light was green, as did the other cars around them. She observed the 18-wheel-er in the center lane and no car in the left lane. Ms. Fitzsimons observed the ambulance go through the intersection very slowly, lane by lane. She then turned to talk to her son, who was sitting in the back seat. At that time, she saw Mr. Price’s blue truck. She testified that the truck did not slow down, even though [fitrafflc was stopped. Mr. Fitzsimons’ testimony was consistent with that of his wife.
In this appeal, Mr. Price argues that the trial court erred in applying a “reckless disregard” or “gross negligence” standard to the facts of this case. He contends that the appropriate standard of review is that of “due care” or “ordinary negligence.” In the alternative, Mr. Price argues that Ms. Valenti’s actions in entering his lane of traffic was contrary to “due care” and the trial court erred in finding otherwise.
This matter is controlled by La. R.S. 32:24, which provides:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of *124 the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider’s whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.
In Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175, 177, the Louisiana Supreme Court found that this statute set forth two alternate standards of care, depending on the circumstances present:
If, and only if, subsections A, B and C of La.Rev.Stat. 32:24 are met, will an emergency vehicle driver be held hable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver’s conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver’s actions will be gauged by an ordinary negligence standard.
The Court then concluded that whether the conduct of the emergency vehicle driver should be gauged by a “reckless disregard” or “ordinary negligence” standard of care is a question to be determined by the trier of fact. Id. at 181.
In reviewing the factual findings of a trial court, this court is limited to a determination of manifest error. An appellate court may not disturb a jury’s finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. A reviewing court, after a full review of the record, may not reverse reasonable findings, even if it had weighed the evidence differently sitting as the trier of fact. Fontenot v. Patterson Ins., 09-0669 (La.10/20/09), 23 So.3d 259.
In this case, the trial court as the trier of fact found that, as a matter of fact, the conditions of La. R.S. 32:24A, B(2), and C applied, and therefore the applicable standard of care was that of “reckless disregard” or “gross negligence.” Gross negligence has been defined as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise.” Rabalais v. Nash, 06-0999 (La.3/9/07), 952 So.2d 653, 658.
Here, the record supports a finding that Ms. Valenti met the requirements of subsections A, B, and C when traversing the intersection, and therefore the trial Lcourt correctly applied the “reckless dis *125 regard” or “gross negligence” standard of care. The record further supports a finding that Ms. Valenti’s actions did not constitute “reckless disregard” or “gross negligence.” The evidence showed that Ms. Valenti was responding to an emergency call and that she “inched” her way across, looking both ways before she entered each lane of the roadway, in her attempt to cross the intersection. We do not find that she was grossly negligent in failing to anticipate that a driver, who was travelling at a much higher rate of speed, would ignore (or fail to hear and see) the lights and siren, and also the fact that traffic was stopped around him, and proceed through the intersection without stopping or even slowing down. Rabalais, supra; Matthews v. Maddie, 01-1535 (La.App. 1 Cir. 6/21/02), 822 So.2d 739, writ denied, 02-2420 (La.11/22/02), 829 So.2d 1052. Accordingly, we find no error in the trial court’s judgment dismissing plaintiffs claims with prejudice.
Mr. Price argues, inter alia, that in order to satisfy the prerequisite of La. R.S. 32:24 B(2) and receive the benefit of being held to the lower “reckless disregard” standard of care, the language of B(2) requires the driver of an emergency vehicle to first show that he or she in fact maintained a reasonableness standard of care and was free from ordinary negligence. Specifically, he contends that the requirement that the emergency vehicle driver may proceed past a red or stop signal or sign “only after slowing down or stopping as may be necessary for safe operation” means such driver must first demonstrate the use of ordinary care in order to be held only to a “reckless disregard” standard of care.
We disagree with this contention for two reasons. First, such a statutory construction requiring the driver of an emergency vehicle to first show a lack of ordinary negligence in order to be held to the lower “reckless disregard” standard would not make sense. Further, such an interpretation would effectively render La. |sR.S. 32:24 B(2) meaningless and without effect. That cannot have been the intent of the legislature. Moreover, given two possible statutory interpretations, courts should choose the interpretation which is logical, reasonable and meaningful, and which would fulfill the obvious intent of the legislature, over an alternative interpretation which is neither. See also Champagne v. Am. Alternative Ins. Corp., 12-1697 (La.3/19/13), 112 So.3d 179, 183.
Secondly, it is apparent from the trial judge’s application of the “reckless disregard” standard that he concluded as a matter of fact that Ms. Valenti did not fail to slow her emergency vehicle to an extent “necessary for safe operation.” Evidence in the record clearly supports such a finding.
Accordingly, and for the reasons discussed above, the trial court’s judgment dismissing the suit filed by appellant, James A. Price, is affirmed. Costs are assessed to appellant.
AFFIRMED.

. Defendants Catlin Insurance Company, Inc. and Geico General Insurance Company were dismissed from this suit prior to trial.