# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1100


**GERALD JANISE**

**VERSUS**

**ACADIAN AMBULANCE SERVICE, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20141721
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.


**AFFIRMED.**

**Brenda Sibille Piccione**
**Piccione & Piccione, A.P.L.C.**
**Post Office Drawer 3029**
**Lafayette, LA 70502-3029**
**(337) 233-9030**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Gerald Janise**

**Tracy P. Curtis**
**Lewis Brisbois Bisgaard & Smith, LLP**
**100 E. Vermillion, Suite 300**
**Lafayette, LA 70501**
**(337) 326-5777**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Gerald Janise**

**Bart Bernard**
**Bart Bernard Law Firm**
**1031 Camellia Boulevard, Suite 301**
**Lafayette, LA   70508**
**(337) 989-2278**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Gerald Janise**

**Brad J. Brumfield**
**Bruce D. Beach**
**Ryan T. Morrow**
**Law Office of Keith S. Giardin**
**9100 Bluebonnet Centre Boulevard, Suite 300**
**Baton Rouge, LA   70809**
**(225) 293-7272**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Acadian Ambulance Service, Inc.**
    **William J. Gerard**
    **Liberty Mutual Insurance Company**

**AMY, Judge.**

This dispute arises from an automobile accident between the plaintiff, Gerald Janise, and William Gerard, who was operating an Acadian Ambulance vehicle at the time of the collision. Following the accident, the plaintiff filed a petition for damages against Mr. Gerard, Acadian Ambulance, and the company's insurer. The jury ultimately found in favor of the defendants, and the plaintiff now appeals. For the following reasons, we affirm.

## Factual and Procedural Background

On April 16, 2013, at the intersection of the Evangeline Thruway and Mudd Avenue in Lafayette, the plaintiff, Gerald Janise, was involved in an automobile accident with William Gerard, an operations supervisor for Acadian Ambulance Service, Inc. (hereafter referred to as "Acadian Ambulance"), who was driving a company vehicle.[1] Subsequently, Mr. Janise filed a petition for damages, naming Mr. Gerard, Acadian Ambulance, and their insurer, Liberty Mutual Insurance Company (hereafter referred to as "Liberty Mutual"), as defendants. The petition alleged: "When confronted with a red light . . . , William J. Gerard, with wanton disregard and gross negligence, failed to obey the traffic control signal, failed to secure a proper lookout, and failed to proceed through the intersection with caution, thereby causing the collision with Gerald Janise's vehicle." The petition further alleged that, as a result of the collision, the plaintiff sustained bodily injury,

---

[1] In his trial testimony, Mr. Gerard explained that, as an operations supervisor, about "50 percent" of his job involves handling administrative duties, while the remaining "50 percent" of his job is spent responding to calls to which dispatch sends him.

Further, Mr. Gerard stated that, as an operations supervisor, he works in a vehicle, which he described as follows: "On the surface, it's a pick-up truck. It's a little bit more elaborate than that, but it is a pick-up truck." When asked how it is more "elaborate," he testified that the truck contains paramedic equipment, as well as lights and a siren.

particularly to his head, neck, and back. The defendants answered, responding, in pertinent part: "Defendant avers that, by statute, it is entitled to qualified immunity due to the use of the ambulance's lights and siren, and, therefore, may not be held liable in this matter in the absence of gross negligence, which is expressly denied."

Thereafter, the defendants filed a motion for summary judgment, arguing that, under La.R.S. 32:24, which is set forth in pertinent part below, "the driver of an emergency vehicle can be held liable only if his conduct amounts to reckless disregard for the safety of others." They argued that the conditions of La.R.S. 32:24 had been met in this case and, further, that Mr. Gerard's actions did not constitute reckless disregard for the safety of others, such that the defendants were not liable to the plaintiff. The trial court denied the defendants' motion for summary judgment, and the matter proceeded to a jury trial.

At trial, when asked to describe the accident, the plaintiff explained that he was traveling south in the left of three lanes on the Evangeline Thruway and approaching the intersection of the Evangeline Thruway and Mudd Avenue when he "heard something" but "wasn't positive if [he] heard an ambulance or not." He testified that he looked to his right and saw an 18-wheeler in the middle lane and that "nothing was in the back of me or the front of me that I noticed." The plaintiff stated that he noticed that the 18-wheeler was "[s]lowly moving, coming to a stop but slowly moving." The plaintiff was asked whether the "[c]ars moving slowly up to the green light and congested traffic" notified him "that something may have been wrong" or "that it may have been unsafe to go through the intersection[.]" The plaintiff responded, "No." He stated that he saw a green light ahead of him, proceeded into the intersection, and then collided with the Acadian Ambulance vehicle.

Mr. Gerard also recounted the accident at trial. He testified that, prior to the accident, he received a call from dispatch directing him to utilize the vehicle's lights and siren to respond to an emergency. After activating the lights and siren, he explained that he was traveling east on Mudd Avenue and had a red light, as well as other vehicles, ahead of him as he approached the Evangeline Thruway. He stated that he stopped the vehicle when he arrived at the Evangeline Thruway and that he noticed vehicles stopped in the right lane of the Evangeline Thruway, which was the lane closest to him, as well as a "bigger vehicle" or large truck in the middle lane. The "bigger vehicle," as Mr. Gerard explained, was large enough to block "some of" his view of the left lane, which was the lane farthest from him, such that he "could see the entry part - - a little bit of the [left] lane" and could see that there was no vehicle stopped in the left lane. He testified that, after observing that there was no vehicle in the left lane and that the traffic in the right and middle lanes had stopped, he started to cross the intersection and was "creeping across . . . slowly" at about five to ten miles per hour. Mr. Gerard confirmed that once he began to cross the intersection, he did not stop the vehicle until the accident.

Additionally, the jury heard testimony from Ronnie Angelle, who witnessed the accident. Mr. Angelle explained that at the time of the accident he was operating a tow truck and traveling southbound on the Evangeline Thruway but could not remember in which lane he was driving. He testified that, about a block before arriving at the intersection of the Evangeline Thruway and Mudd Avenue, he heard a siren. He stated that, as he approached Mudd Avenue, "everybody was either slowing down to stop or were stopped" even though the traffic light ahead was green. He testified that he then saw an emergency vehicle to his right on Mudd Avenue and further observed lights on the vehicle. Mr. Angelle testified

that he stopped "about four or five car lengths away from . . . the stoplight," and noticed a car come from somewhere behind him, enter the intersection while the traffic light was still green, and collide with the Acadian Ambulance vehicle.

After the plaintiff presented his case in chief, the defense moved for a directed verdict, asserting that the record contained support that the conditions of La.R.S. 32:24 had been met, namely that Mr. Gerard was stopped before entering the intersection, proceeded with caution, and used lights and a siren. The defense argued that, because the conditions of the statute had been met, the question was whether the record contained evidence of gross negligence. The defense contended that the record did not contain evidence of gross negligence, such that a directed verdict was proper. However, the trial court denied the defendants' motion for directed verdict. After the defendants presented their case in chief, the plaintiff also moved for a directed verdict, alleging that La.R.S. 32:24 was inapplicable because the defendants had not established that Mr. Gerard was responding to an emergency at the time of the accident. The trial court denied the plaintiff's motion.

The jury ultimately found that Mr. Gerard was responding to an emergency call; that Mr. Gerard proceeded past a red or stop signal but only after slowing down or stopping as may be necessary for safe operation; that Mr. Gerard made use of audible or visual signals sufficient to warn motorists of his approach; and that Mr. Gerard did not act with reckless disregard for the safety of others. In accordance with the jury's verdict, the trial court issued a judgment dismissing Mr. Janise's claims against Mr. Gerard, Acadian Ambulance, and Liberty Mutual, with prejudice. The plaintiff now appeals, asserting the following assignments of error:

4

1. The jury was clearly wrong when it found [Mr.] Gerard was responding to an emergency call.

2. The jury was clearly wrong when it found [Mr.] Gerard proceeded through a red light but only after slowing down as necessary for safe operation [in] accordance with La.R.S. 32:24.

3. The jury was clearly wrong when it failed to follow the dictates of La.Civ.Code art. 2323 which requires the trier of fact to determine the degree or percentage of negligence of all persons causing or contributing to the injury.

4. The jury was clearly wrong in failing to award general and special damages to Gerald Janise.

## Discussion

The plaintiff's first two assignments of error deal with the applicability of the emergency vehicle statute, La.R.S. 32:24, which provides, in pertinent part:

> A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, . . . may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

> B. The driver or rider of an authorized emergency vehicle may do any of the following:

> . . . .

> (2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.

> . . . .

> C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals . . . sufficient to warn motorists of their approach . . . .

> D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

In discussing La.R.S. 32:24, the supreme court has explained:

5

La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."

"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (1942). "Reckless disregard" or "gross negligence" is the standard to be applied if the emergency vehicle driver's actions fit La.Rev.Stat. 32:24(A) through La.Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.

Thus, if the provisions of subsections A, B and C of La.Rev.Stat. 32:24 apply to the accident or incident in question, then the driver will be held liable only for his conduct which constitutes reckless disregard for the safety of others.

*Lenard v. Dilley*, 01-1522, pp. 6-7 (La. 1/15/02), 805 So.2d 175, 180.

Whether the emergency vehicle driver's conduct "should be gauged by a 'reckless disregard' or 'ordinary negligence' standard of care is a question" for the trier of fact. *Price v. Valenti*, 13-822, p. 6 (La.App. 5 Cir. 4/19/14), 140 So.3d 121, 124, *writ denied*, 14-0978 (La. 8/25/14), 147 So.3d 1120. Regarding appellate review of factual findings, the supreme court has explained:

In reviewing the factual findings of a trial court, we are limited to a determination of manifest error. *Hill v. Morehouse Parish Police Jury*, 95–1100, p. 4 (La.1/16/96), 666 So.2d 612, 615. It is well settled that an appellate court may not disturb a jury's finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. *Syrie v. Schilhab*, 96–1027, p. 4 (La.5/20/97), 693 So.2d 1173, 1176. An appellate court must do more than simply review the record for some evidence which supports or controverts the findings. *Stobart v. State of La., through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). It must instead review the record in its entirety to

6

determine whether the factual findings were clearly wrong or manifestly erroneous. *Id.*

> Significantly, the issue to be resolved is not whether the jury was right or wrong, but whether its conclusion was reasonable. *Id.* Thus, this Court, after a full review of the record, may not reverse reasonable findings, even if we had weighed the evidence differently sitting as the trier of fact. *Siverd v. Permanent General Ins. Co.*, 05–0973, p. 3 (La.2/22/06), 922 So.2d 497, 500.

*Fontenot v. Patterson Ins.*, 09-0669, pp. 8-9 (La. 10/20/09), 23 So.3d 259, 267.

With this standard of review in mind, we turn to consideration of the plaintiff's assignments of error.

*Responding to an emergency call*

In his first assignment of error, the plaintiff asserts that "[t]he jury was clearly wrong when it found [Mr.] Gerard was responding to an emergency call." In briefing to this court, the plaintiff argues that the defendants did not prove that Mr. Gerard was responding to an emergency call, such that La.R.S. 32:24 does not apply to this case. In particular, the plaintiff alleges that "the evidence does not support the need for an emergency dispatch" because "[Mr.] Gerard acknowledged that he knew another ambulance had been dispatched and was on its way to the scene." The plaintiff further asserts that the defendants failed to prove Mr. Gerard was responding to an emergency because Mr. Gerard "had been dispatched to check on a child who was hot earlier in the day, but 'is sleeping now, breathing all right.'"

We begin by addressing the plaintiff's argument that the evidence does not support the need for an emergency dispatch because Mr. Gerard testified that he knew another ambulance was on its way to the scene. In his testimony, Mr. Gerard acknowledged that, prior to the accident, he knew an ambulance had also been called to the scene. However, Mr. Gerard explained that part of his job duty as

7

operations supervisor is to respond to calls to which an ambulance is also dispatched to the scene. Further, Mr. Gerard stated that sometimes he arrives at the scene prior to the ambulance and that his truck is equipped with the same supplies as an ambulance, such that he can begin to respond to the emergency before the ambulance arrives. The following colloquy occurred during Mr. Gerard's testimony:

> Q. The other part of operations is that you would actually respond to calls that Dispatch sent you to?
>
> A. Yes.
>
> Q. And that's sort of to back up the paramedic or the ambulance?
>
> . . . .
>
> A. Well, sometimes we do arrive after the ambulance and sometimes we may arrive before the ambulance arrives.
>
> Q. Okay. And when you were talking earlier about how the truck is allowed - - that you work out of - - it has equipment and gauge and things like that, that you can use for emergencies?
>
> A. Everything that an ambulance carries, we have on our truck, just maybe smaller quantities.
>
> . . . .
>
> Q. And what you do then is, you - - if you're called, you are sent in tandem, thought [sic], with an ambulance, right? You're never just called on your own. You know that an ambulance is going to the scene as well?
>
> A. Most of the time, not always.
>
> . . . .
>
> Q. Now, the instances where you're also called, in addition to the ambulances, sometimes you might be closer than the ambulance, right?
>
> A. Correct.
>
> Q. And the thought is that you get there maybe to the scene or the caller before the ambulance, right?

> A. Correct.
>
> Q. And that helps reduce the response time?
>
> A. Correct.

Considering the foregoing testimony from Mr. Gerard regarding the potential for an operations supervisor to arrive on scene prior to the ambulance and begin responding to an emergency, we find that the record contains evidence to support the jury's finding that Mr. Gerard was responding to an emergency call. *See Fontenot*, 23 So.3d 259.

We next consider the plaintiff's assertion that the jury was wrong in finding that Mr. Gerard was responding to an emergency call because he was "dispatched to check on a child who was hot earlier in the day but 'is sleeping now, breathing all right.'" As discussed above, La.R.S. 32:24 applies and grants certain privileges to drivers of an authorized emergency vehicle "when responding to an emergency call." For example, in *Freeman v. Washington Parish Fire Dist. No. 6*, 15-0273, p. 17 (La.App. 1 Cir. 9/18/15), 181 So.3d 91, 103, the appellant therein similarly contended that the record did not support a finding that the emergency vehicle driver was responding to an emergency call, asserting: "[The emergency vehicle driver] admitted that [the patient] had been non-responsive, without a pulse or heartbeat and not breathing for approximately fifty-five minutes[.]" On appeal, the first circuit stated that the call to which the emergency vehicle driver responded was a "Code 3 medical emergency" for which the emergency vehicle driver was required to activate the vehicle's lights and siren. *Id.* The first circuit further noted that "[the emergency vehicle driver] admitted that he was of the belief that [the patient] may have already died, given that he was unresponsive at his home and when they placed him in the ambulance. However, he stated that did not give him

9

any authority to downgrade the emergency code under which he was required to proceed." *Id.* The first circuit ultimately concluded that the record supported the jury's finding that the emergency vehicle driver was responding to an emergency call. *Id.*

Turning to the facts of this case, Mr. Gerard testified about Acadian Ambulance's response procedure. Like the emergency vehicle driver in *Freeman*, 181 So.3d 91, Mr. Gerard explained that he does not determine the emergency nature of the situation. Specifically, Mr. Gerard stated: "I don't make the determination on how I respond. I'm directed by my dispatch center, how I respond to calls." In this regard, Mr. Gerard testified that the dispatch center determines and instructs Mr. Gerard whether a call is considered an emergency or "lights and siren" situation. Regarding the call he received prior to the accident at issue herein, Mr. Gerard testified that he activated the vehicle's lights and siren after dispatch instructed him to do so.

Mr. Gerard further testified regarding the specific nature of the call that he received prior to the accident, and the following colloquy occurred:

Q. All right. Well, tell us then, what kind of call were you on?

A. It looked like a three-year-old with a seizure. That's what I can remember.

. . . .

Q. What is that? What else do you remember? Please tell the jury what else you remember.

A. The three-year-old in a car that got hot.

Q. What else?

A. Sleeping now, breathing.

. . . .

10

Q. You were relying on Dispatch that you needed lights and siren?

A. That's correct.

Q. You were relying on them, Dispatch, Acadian's dispatch, that the call was a legitimate emergency, correct?

A. Obviously, yes.

In his testimony, Mr. Gerard also indicated that the emergency nature of the call is not necessarily ascertainable in advance:

Q. What happens in those cases when it is not a false alarm? Is there any variety in the patients that you encounter in that context where it's not a false alarm?

A. Yes.

Q. Can you tell the jury something about that?

A. Well, sometimes it could be something minor or it could be something life threatening.

Q. Okay.

A. It can be anywhere in between.

Q. And do you know before you get there?

A. No.

. . . .

Q. Have you responded to any calls that you considered less emergent and then found out that was wrong?

A. Yes.

Q. How often does that happen?

A. Every day.

. . . .

Q. Why? And why do you respond to false alarms?

A. Because it could be a true alarm.

11

Considering the foregoing testimony from Mr. Gerard regarding the instruction he received from dispatch that he was to respond to a "lights and siren" situation, as well as the specific nature of the call, the record contains evidence to support the jury's finding that Mr. Gerard was responding to an emergency call. *See Freeman*, 181 So.3d 91. *See also Fontenot*, 23 So.3d 259.

Having reviewed the record in its entirety, we find that the jury's determination that Mr. Gerard was responding to an emergency at the time of the accident was reasonable and was not clearly wrong or manifestly erroneous.

*Slowing down or stopping as may be necessary for safe operation*

We next consider the second assignment of error in which the plaintiff asserts: "The jury was clearly wrong when it found [Mr.] Gerard proceeded through a red light but only after slowing down as necessary for safe operation [in] accordance with La.R.S. 32:24." As discussed above, an emergency vehicle driver may "[p]roceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation." La.R.S. 32:24(B)(2). For example, in *Price*, 140 So.3d 121, the emergency vehicle driver testified that, while crossing an intersection at which she had a red light, she was traveling at approximately five miles per hour and had observed a car in the right lane closest to her, as well as an 18-wheeler truck in the middle lane. *Id.* The emergency vehicle driver "did not see any vehicle prior to entering the left lane" and "also testified that her view was not blocked by the 18-wheeler and that she could see farther down [the] [p]arkway." *Id.* at 123. A witness "observed the ambulance go through the intersection very slowly, lane by lane." *Id.* The fifth circuit concluded that the emergency vehicle driver's conduct met the requirement of La.R.S. 32:24(B)(2). *Id.*

The testimony regarding Mr. Gerard's attempt to cross the intersection is similar to the testimony adduced in *Price*, 140 So.3d 121. Mr. Gerard testified as follows:

Q.    So when you got to Evangeline, you stopped?

A.    Yes.

Q.    And you looked to your left and saw the three - - there were three southbound lanes of Evangeline Thruway - -

A.    Correct.

      . . . .

Q.    And you saw to your left multiple cars backed up in the first lane, the lane closest to you?

A.    Correct.

Q.    And you saw a vehicle in the middle lane?

A.    Yes.

Q.    And that was the 18-wheeler?

A.    I remember it being a bigger vehicle and a passenger car, yes.

Q.    So a large truck?

A.    Yes.

Q.    It is a vehicle that was large enough to block your view of the far left lane, correct?

A.    Some of it, yes.

Q.    Well, what do you mean, some of it?

A.    Well, I could see the entry part - - a little bit of the lane. I couldn't do it all - -

      . . . .

Q.    So you could see the very front of the far left lane and you could see that there wasn't a car stopped there or any vehicle stopped there?

13

A.     Correct.

Q.     And after you observed the traffic in the closest lane, in the middle lane, had recognized you, you started to cross the intersection, correct?

A.     Creeping across, yes, slowly.

Q.     Going five to ten miles per hour?

A.     Correct.

Additionally, Mr. Angelle, who witnessed the accident, stated that Mr. Gerard "crawled through the intersection, slowly."

Having reviewed the record in its entirety, and considering the testimony of both Mr. Gerard and Mr. Angelle, we find that the jury's determination that Mr. Gerard proceeded through the red light after slowing down or stopping as necessary for safe operation in accordance with La.R.S. 32:24(B)(2) was reasonable and was not clearly wrong or manifestly erroneous.

*Failure to determine the degree or percentage of negligence*

In his third assignment of error, the plaintiff contends that "[t]he jury was clearly wrong when it failed to follow the dictates of La.Civ.Code art. 2323 which requires the trier of fact to determine the degree or percentage of negligence of all persons causing or contributing to the injury." As discussed above, the supreme court has explained:

> La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."

*Lenard*, 805 So.2d at 180.

14

Above we have determined that the jury was not clearly wrong or manifestly erroneous in concluding that Mr. Gerard's conduct fit the conditions in subsections A and B of La.R.S. 32:24, namely that Mr. Gerard was "responding to an emergency call" and that he "[p]roceed[ed] past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation." Regarding whether Mr. Gerard was "making use of audible or visual signals . . . sufficient to warn motorists" of his approach in accordance with La.R.S. 32:24(C), Mr. Gerard testified that he activated the vehicle's lights and siren after dispatch instructed him to do so, and he explained that a "yelp" siren tone is used at intersections to make the emergency vehicle "more noticeable." Additionally, Mr. Angelle testified that "approaching the intersection, [he] could hear sirens" about a block away and that he "s[aw] the lights" on the Acadian Ambulance vehicle. Considering the foregoing, we conclude that the jury's determination that Mr. Gerard used audible or visual signals sufficient to warn other motorists was reasonable and was not clearly wrong or manifestly erroneous. *See Fontenot*, 23 So.3d 259. Accordingly, the record supports a finding that Mr. Gerard's conduct met the requirements of subsections A, B, and C of La.R.S. 32:24 when crossing the intersection, and therefore the jury was correct to apply the "reckless disregard" or "gross negligence" standard. La.R.S. 32:24. *See also Lenard*, 805 So.2d 175.

Furthermore, and in consideration of that standard, we find that Mr. Gerard's actions did not constitute "reckless disregard" or "gross negligence." As discussed above, Mr. Gerard stated that he stopped when he arrived at the intersection and entered the intersection only after observing that there was no vehicle in the left lane and that the traffic in the right lane and the middle lane had stopped. The testimony supported the view that Mr. Gerard "slowly" and "cautiously" crossed

15

the intersection at about five to ten miles per hour in a manner he described as "creeping" and which Mr. Angelle described as "crawl[ing]." Further, Mr. Gerard testified that he "was trying to see if there was a vehicle coming" as he crossed the intersection and that "[a]s far as [he] could see, as [he] was going through it, it was clear[.]" Given that version of events, and as apparently accepted by the jury, we do not find that Mr. Gerard "was grossly negligent in failing to anticipate that a driver . . . would ignore (or fail to hear and see) the lights and siren, and also the fact that traffic was stopped around him, and proceed through the intersection without stopping or even slowing down." *Price*, 140 So.3d at 125. Accordingly, we find no error in the jury's determination that Mr. Gerard did not act with reckless disregard for the safety of others, thus declining to assign a degree or percentage of negligence to Mr. Gerard.

*Failure to award general and special damages*

In his last assignment of error, the plaintiff argues that "[t]he jury was clearly wrong in failing to award general and special damages to Gerald Janise." In view of our determination that the record supports the jury's finding that Mr. Gerard did not act with reckless disregard or gross negligence and thus should not have been assigned a degree or percentage of negligence, we pretermit consideration of this assignment of error.

**DECREE**

For the foregoing reasons, we affirm the judgment of the trial court, dismissing Gerald Janise's claims against William Gerard, Acadian Ambulance Service, Inc., and Liberty Mutual Insurance Company, with prejudice. All costs of this proceeding are assessed against the plaintiff, Gerald Janise.

**AFFIRMED.**

16