STEWART, J.
_JjThe plaintiff, Cathy Griffin (“Griffin”), sued the defendants, the City of Monroe and Jeffrey P. Pilcher (“Pilcher”), for damages stemming from an automobile accident. The trial court rendered judgment in favor of the defendants. Griffin now appeals. At issue is whether the trial court was correct to judge Griffin’s conduct according to that of a driver entering a highway and whether the trial court erred in its application of the standard applicable to drivers of emergency vehicles. Finding no error in the trial court’s judgment, we affirm.
FACTS
The accident occurred at about 5:00 p.m. on July 22, 2008, on Forsythe Avenue in Monroe, Louisiana. Forsythe is a five-lane roadway with two eastbound lanes, two westbound lanes, and a center turn lane. Pilcher, a patrolman with the Monroe Police Department, was parked in a parking lot off the eastbound lanes of For-sythe and using a radar gun to check for speeders. The speed limit on this area of Forsythe is 35 miles per hour. After clocking an eastbound vehicle traveling 53 *849 miles per hour, Pilcher left the parking lot by taking a right on Forsythe to pursue the speeder. Pilcher’s patrol car was equipped with emergency lights in the front grille and rear dash, which he activated upon beginning the pursuit, and a dashboard video camera, which had been recording. An audio recording also began when the pursuit started. During the pursuit, Pilcher was using a hands-free cell phone device to talk to another officer about an upcoming golf tournament.
li>As Pilcher began pursuing the speeder, Griffin was preparing to exit the parking lot of a Chase Bank located on the westbound side of Forsythe. Griffin wanted to turn left across Forsythe and get all the way to the outside eastbound lane so that she could then take a right at Oliver Road. As Pilcher was approaching, Griffin began her turn. Just as she entered the outer eastbound lane, she was hit from behind by Pilcher. Due to Pilcher’s braking in an effort to avoid a collision, the accident was minor. ' Thirty days after this accident, Griffin was involved in another automobile accident that caused substantial damage to the front end of her vehicle.
At trial, Griffin testified that she had looked to her left (east) and then to her right (west) prior to entering Forsythe. She waited for a westbound truck coming from her left to pass and then entered the roadway. Because nothing had been coming when she looked right, Griffin did not look to her right again or stop in the turn lane to check for oncoming traffic before entering the eastbound lanes. Griffin testified that she did not see Pilcher’s patrol car traveling eastbound until it hit her from behind.
Pilcher testified that after entering the outside eastbound lane, he changed lanes to get around a vehicle turning right. He then got back into the outside lane at which time he observed Griffin’s vehicle leaving the Chase Bank parking lot and entering Forsythe. He saw her cross the two westbound lanes and the center turn lane. He assumed she would enter the inside eastbound lane since he was approaching in the outside lane. At that time, he let off the acceleration. When he saw that Griffin was entering his lane of travel, he stomped on the brakes but could not avoid hitting Griffin’s lavehicle. Pil-cher admitted at trial that he was not sure how fast he was driving and that his focus was on the traffic on the road, not the speedometer.
Jeffery Lynn Sanders, an officer with the Monroe Police Department, qualified as an expert in accident reconstruction. Two weeks prior to trial, he reviewed the dashboard video recording, the accident report, and photographs from the accident. Using the video recording along with Google Maps and his own measurements of Forsythe, Sanders determined the distance traveled by Pilcher and his speed for each second of the video until the accident. Sanders determined that Pilcher had reached a maximum speed of 76 miles per hour in an attempt to catch up to the speeder. Sanders agreed with Griffin’s counsel that if Pilcher had decreased his speed when he saw her cross the westbound lanes the accident could have been avoided. However, he also testified that if Pilcher could see Griffin move across the westbound lanes of Forsythe, then she could have seen him approaching if she had looked in Pilcher’s direction. Sanders stated that Griffin was turning at an angle and that her vehicle never got completely straight in the outside eastbound lane before the accident occurred.
The dashboard video recording was introduced into evidence. It shows that just as Pilcher is changing from the inside to the outside lanes after passing a vehicle, Griffin is proceeding from the parking lot *850 onto the roadway. She enters the roadway between two westbound vehicles and proceeds without hesitation through the lanes of travel. As Pilcher returns to the outside eastbound lane, Griffin is entering the center turn lane. LBraking from Pil-cher’s patrol can be heard just as the right front tire of Griffin’s vehicle approaches the dividing line between the two eastbound lanes of travel. The impact appears to occur simultaneously with Griffin’s entry into the outer eastbound lane.
The trial judge found at the close of trial that Griffin was clearly negligent. He noted that Griffin just avoided a collision with a westbound vehicle when she pulled out onto Forsythe and that she then crossed the lanes of travel and entered the outside lane where the collision occurred. After taking the matter under advisement to determine whether any fault should be assessed against Pilcher, the trial judge found no fault on his part. The trial judge concluded that Pilcher was doing what was necessary to apprehend a speeder and was not driving with reckless disregard for the safety of others, whereas Griffin pulled onto Forsythe without seeing what she should have seen, namely, Pilcher’s approaching patrol car with its emergency lights flashing.
After the denial of a motion for a new trial, Griffin appealed the trial court’s judgment allocating sole fault against her and none against Pilcher.
DISCUSSION

Griffin’s Fault

Griffin argues that it was legal error for the trial court to judge her actions according to the standard of conduct applicable to a driver entering a highway. She argues that the accident did not occur as she was entering the highway. Rather, it was a rear-end collision that occurred after she had successfully entered the outside eastbound lane of travel and was | .^proceeding forward in that lane. She asserts that she did not see Pilcher’s vehicle when she looked to her right before entering Forsythe because it was more than 600 feet away and there was no need for her to look again.
La. R.S. 32:124 provides that a “driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building ... shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.” The driver entering a highway has the primary duty to avoid a collision. This is a high duty which requires the entering driver to use every reasonable means available to make sure that he can safely enter the highway. The driver must keep a lookout for vehicles on the highway and not enter until safe to do so. Cooley v. Trinity Universal Ins. Co., 37,701, p. 9-10 (La.App.2d Cir.11/26/03), 862 So.2d 248, 254, writ denied, 2003-3532 (La.3/12/04), 869 So.2d 825; Daniels v. Burridge, 2000-1089, p. 5-6 (La.App. 4th Cir.3/21/01), 785 So.2d 906, 910-911, writ denied, 2001-1110 (La.6/1/01), 793 So.2d 201. Keeping a lookout requires one not only to look, but to see what should be seen. Looking but not seeing what should be seen is tantamount to not looking at all. Smith v. Commercial Union Ins. Co., 609 So.2d 1024, 1026 (La.App. 2d Cir.1992), writ denied, 612 So.2d 86 (La.1993).
Additionally, drivers are required to yield the right of way upon the immediate approach of authorized emergency vehicles making use of audible or visual signals. La. R.S. 32:125(A). This duty arises when a motorist observes or hears, or under the circumstances should have observed or heard, the audible or visual warnings. Neloms v. Empire Fire and Marine Ins. Co., 37,786, p. 8 (La.App.2d *851 Cir.10/16/03), 859 So.2d 225, 231; Pope v. Prunty, 37,395, p. 13 (La.App.2d Cir.8/20/03), 852 So.2d 1213, 1221, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137.
Griffin testified that she looked to her left and then to her right before entering Forsythe after waiting for a westbound vehicle to pass. Because she did not see any eastbound traffic on her right, she did not look back in that direction as she crossed four lanes and entered the outside eastbound lane. Had Griffin maintained a proper lookout for oncoming traffic as she crossed the two westbound lanes, the center turn lane, and the inside eastbound lane, she would have seen the approach of Pilcher’s patrol car with its emergency lights activated. As established by the video and by Officer Sanders’ testimony, Griffin had the opportunity to have seen Pilcher’s vehicle approaching before she completed her turn into the outside eastbound lane.
Contrary to her argument that this was a rear-end collision that occurred after she had successfully entered the outside eastbound lane and was proceeding forward, the video from Pilcher’s patrol car shows that the accident occurred simultaneously with the entry of Griffin’s vehicle into Pil-cher’s lane of travel. The braking of Pil-cher’s vehicle can be heard just as the right front tire of Griffin’s vehicle approaches the dividing line between the two eastbound lanes. Griffin never had command of the outside eastbound lane prior to impact.
The video establishes that the accident resulted from Griffin entering Forsythe from a private parking lot and turning left across the lanes of travel |7and into the outside eastbound lane immediately ahead of Pilcher’s vehicle. Had she kept a proper lookout to her right for oncoming traffic as she made her turn, she would have seen the approach of Pilcher’s patrol car with its emergency lights activated and could have either remained in the center turn lane or in the inside eastbound lane until he passed.
For these reasons, we find no legal error by the trial court in assessing Griffin’s actions under the standard applicable to a driver entering a highway. Additionally, we find no manifest error in the trial court’s finding of fault on the part of Griffin in causing the accident.

Pilcher’s Fault

Griffin argues that the trial court erred in finding no fault on the part of Pilcher even though the record established his excessive speed, the lack of an overhead light on the patrol car or siren to warn of his approach, his failure to honk or slow his vehicle as she entered Forsythe, and that he was talking on a cell phone. She contends that his actions violated the duty of ordinary care and that of reckless disregard for the safety of others. Moreover, Griffin contends that the trial court did not determine whether the requirements for applying the reckless disregard standard to Pilcher’s actions were met.
La. R.S. 32:24 states:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
|s(l) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down *852 or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
As explained in Lenard v. Dilley, 2001-1522 (La.1/15/02), 805 So.2d 175, La. R.S. 32:24 provides two alternate standards of care for the drivers of emergency vehicles. Which standard applies depends on the circumstances of the case. The reckless disregard standard applies if, and only if, the driver’s actions fit subsections A, B, and C of the statute. If the driver’s action or conduct does not fit these subsections, then the driver will be held to the standard of due care. Id., 2001-1522, p. 6, 805 So.2d at 180. Reckless disregard means gross negligence, whereas due care is ordinary negligence. Id.
The trial court’s findings of fact may not be set aside on appeal unless clearly wrong or manifestly erroneous. Rabalais v. Nash, 2006-0999, p. 4 (La.3/9/07), 952 So.2d 653, 657; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). This is so even where the court of appeal is convinced that it would | flhave weighed the evidence differently and reached a different result. Rabalais, supra; Blair v. Tynes, 621 So.2d 591, 601 (La.1993). The issue to' be resolved is not whether the trier of fact was right or wrong, but whether its factual conclusion was reasonable. Rabalais, supra. Where there are two permissible views of the evidence, the fact-finder’s choice cannot be manifestly erroneous or clearly wrong. Id., citing Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). Both the existence of negligence and the allocation of fault are factual determinations subject to the trial court’s great discretion. Easter v. Direct Ins. Co., 42,178, p. 8 (La. App.2d Cir.5/9/07), 957 So.2d 323, 328.
Review of the trial transcript and the trial court’s written reasons for judgment show that the trial court found the reckless disregard standard applicable under the circumstances of this case. The record shows that Pilcher’s actions satisfied subsections A, B, and C of La. R.S. 32:24 and that he did not act with reckless disregard for the safety of others.
Pilcher was the driver of an authorized emergency vehicle and was in pursuit of an actual or suspected violator of the law, namely, the driver he clocked traveling 53 miles per hour eastbound on Forsythe where the speed limit was 35 miles per hour. Pilcher testified that he normally tickets only drivers who exceed 50 miles per hour on that roadway. In order to make up the distance between himself and the speeder, Pilcher exceeded the maximum speed limit by driving up to 76 miles per hour as determined by Officer Sanders’ calculations. The trial court found Pilcher’s top speed to be “relatively high” but concluded that it was necessary for him to exceed | inthe speed limit in order to close the gap between himself and the offender. The video shows that Pilcher *853 drove around one vehicle and returned to the outside lane which was clear ahead of him for some distance. The roadway was flat and straight, and the traffic was not heavy. The trial court was critical of Pil-cher’s use of a hands-free cell phone during the pursuit of the speeder. However, the trial court did not find the cell phone conversation to have contributed to the accident. Pilcher testified that he was using an earpiece and was not distracted by the call. Having reviewed the video, we agree that Pilcher’s use of the hands-free cell phone, while not advisable, did not contribute to the accident. We cannot say that Pilcher endangered life or property by exceeding the speed limit to catch up to the speeding vehicle.
Finally, the parties stipulated that the emergency lights on Pilcher’s patrol car were activated. These included lights on the front grille and rear dash. Nothing in the record suggests that these emergency lights would not be a visual signal sufficient to warn motorists of the vehicle’s approach. In fact, the video shows that two vehicles traveling in the inside eastbound lane when Pilcher pulled onto For-sythe appeared to slow their vehicles in response to his approach. Notably, Griffin did not testify that she did not see the emergency lights on Pilcher’s approaching vehicle. She testified that she did not see Pilcher’s vehicle at all. As previously explained, Griffin’s failure to keep a proper lookout while entering Forsythe and crossing four lanes of travel before entering the outside eastbound lane is |nwhat prevented her from seeing the approach of Pil-cher’s vehicle with its emergency lights activated.
Because subsections A, B, and C of La. R.S. 32:24 are satisfied, the reckless disregard standard applies under the circumstances of this case. Griffin cites two cases .in support of her argument that Pilcher should be found at fault. Both are distinguishable. In Ponville v. Travelers Ins. Co., 340 So.2d 331 (La.App. 1st Cir.1976), a state trooper in pursuit of a speeder on a two-lane highway struck the rear of another vehicle. The court affirmed a judgment finding the trooper negligent and not in compliance with La. R.S. 32:24 by traveling at an excessive rate of speed without operating his siren. At that time, La. R.S. 32:24(C) required emergency vehicles to use “audible and visual signals sufficient to warn motorists of their approach.” The statute was amended in 1980 to substitute “or” for “and” between “audible” and “visible.” In Moore v. Travelers Indent. Co., 352 So.2d 270 (La.App. 2d Cir.1977), writ denied, 354 So.2d 1049 (La.1978), the state trooper was found solely at fault for a fatal accident where he was exceeding the speed limit in pursuit of a speeder and where he had neither his siren nor emergency lights activated. Here, Pilcher, though traveling at a high speed, was in compliance with La. R.S. 32:24. He had his emergency lights activated thereby providing visual signals to warn motorists of his approach.
The trial court concluded that Pilcher was “doing what was reasonably necessary to catch and stop a speeding motorist” and that he was not acting in reckless disregard for the safety of others. Upon viewing the [12video, we are persuaded that Griffin was solely at fault. Even though Pilcher had accelerated to a high rate of speed and was aware that Griffin had entered Forsythe, he was allowed to presume that she would not drive into his path. See Daniels, 2000-1089, p. 5, 785 So.2d at 910, citing Davis v. Galilee Baptist Church, 486 So.2d 1021, 1024 (La.App. 2d Cir.1986). Pilcher testified that he let off the accelerator when Griffin left the center turn lane. Then, as can be heard on the video, he applied the brakes as soon as it was apparent that Griffin was entering his lane of *854 travel just ahead of him. For her part, Griffin entered the roadway and proceeded to cross four lanes of travel without keeping a proper lookout and seeing what should have been seen, namely, the rapidly approaching vehicle with emergency lights activated. Based on our review of the record, we find the trial court’s judgment to be neither clearly wrong nor manifestly erroneous.
CONCLUSION
For the reasons set forth above, we affirm the trial court’s judgment. Costs of appeal are assessed against the plaintiff, Cathy Griffin.
AFFIRMED.