MARTA I. GARCIA AND LESTER A. MOLINA

VERSUS

CITY OF KENNER, KENNER POLICE
DEPARTMENT AND RONALD BERTUCCI

NO. 20-CA-378

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 657-982, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

December 22, 2021

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
    **SJW**
    **SMC**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy J. Vega
Chief Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
MARTA I. GARCIA AND LESTER A. MOLINA
    Terrence J. Lestelle
    Andrea S. Lestelle
    Richard M. Morgain
    Evan P. Lestelle
    Randy J. Ungar

COUNSEL FOR DEFENDANT/APPELLEE,
CITY OF KENNER, KENNER POLICE DEPARTMENT AND RONALD
BERTUCCI
    Deborah A. Villio
    Michael L. Fantaci
    James C. Raff

**WINDHORST, J.**

In this personal injury action involving damages from a motor vehicle accident, plaintiffs-appellants, Marta Garcia and Lester Molina, appeal the trial court's judgment in favor of defendants-appellees, the City of Kenner, Kenner Police Department, and Ronald Bertucci, which resulted in the dismissal of plaintiffs' claims. For the following reasons, we affirm the trial court's judgment.

**EVIDENCE and PROCEDURAL BACKGROUND**

On April 2, 2008, plaintiffs filed suit against the City of Kenner, the Kenner Police Department and Officer Bertucci, a Kenner Police Department police officer, for damages allegedly suffered in a motor vehicle accident involving plaintiffs and Officer Bertucci. The accident occurred on April 5, 2007, approximately 7:38 A.M., while Officer Bertucci was attempting to stop a speeding vehicle, and Ms. Garcia pulled out directly in front of Officer Bertucci's path from a side street. Mr. Molina was a passenger in Ms. Garcia's vehicle.

On the morning of the accident, Officer Bertucci was monitoring motorists' speed on West Napoleon Avenue in Kenner, from an eastbound position where he targeted traffic on both sides of the canal that divides the lanes of West Napoleon. This roadway has a 35 miles per hour speed limit. Upon registering a vehicle traveling at 53 miles per hour westbound from his position across the canal, Officer Bertucci activated his emergency lights and siren and pursued the vehicle. To catch the speeding vehicle, Officer Bertucci had to drive in the opposite direction, U-turn across the canal, and then chase the speeder several blocks back in the other direction. In addition, he had to drive much faster than the 35 miles per hour speed limit.

While he was in pursuit of the suspected speeder, Ms. Garcia turned out of Illinois Avenue onto West Napoleon Avenue in the path of Officer Bertucci's vehicle. Officer Bertucci testified that he was less than one block away, between

Indiana Avenue and Illinois Avenue, when Ms. Garcia turned onto West Napoleon Avenue. After braking and attempting to avoid the collision, Officer Bertucci collided with Garcia's vehicle near the Illinois Avenue intersection.

After a three-day trial during which testimony was elicited from a number of witnesses, the trial court rendered judgment in favor of defendants and dismissed plaintiffs' claims against them with prejudice. In finding defendants were not liable to plaintiffs, the trial court concluded that the emergency responder exception set forth in La. R.S. 32:24 applied; that Officer Bertucci's actions were not grossly negligent; and that Ms. Garcia was solely at fault in causing the accident. Because the trial court concluded that no gross negligence or reckless disregard could be attributed to Officer Bertucci, there was no basis to impose liability on the Kenner Police Department or the City of Kenner.

The trial court applied the emergency responder exception because, based on testimony from multiple witnesses, the trial court found the Officer Bertucci activated both his lights and siren well before the collision while he was pursuing the speeder who was violating the law at the time of the accident. Officer Bertucci testified that he activated his lights and sirens. Denise Bremermann, an eye-witness to the accident, testified she saw Officer Bertucci turn on his emergency lights and siren and pull out westbound onto West Napoleon Avenue to pursue a speeding vehicle, and that he had to travel several blocks to catch the vehicle. Brian McKnight, who was traveling in the opposite direction of Officer Bertucci at the time of the incident, confirmed that Officer Bertucci activated his lights.[1] Although Ms. Garcia testified that it was her belief Officer Bertucci did not activate his lights and siren, there was evidence at trial that Ms. Garcia's vision was heavily diminished due to multiple eye surgeries and being legally blind in her left eye.

---

[1] Mr. McKnight could not confirm or deny whether Officer Bertucci activated his siren possibly because his windows were up.

Because the trial court applied the emergency responder exception, it evaluated Officer Bertucci's actions under a gross negligence standard to determine whether defendants were liable to plaintiffs. After hearing all the testimony and viewing all the evidence, the trial court concluded that Officer Bertucci was not acting in a grossly negligent manner or with reckless disregard for the safety of others at the time of the accident. Trial testimony indicated the roadway was dry, the weather was clear, and traffic was light on the morning of the incident. Dr. Lloyd Grafton, who was accepted as an expert in the field of police policy and procedure as it relates to emergency vehicle driving, testified that Officer Bertucci's set up for speed enforcement was commonly used. He also testified that Ms. Garcia had the duty to yield the right of way to the oncoming police unit driven by Officer Bertucci because he had his lights and siren on, and because he had the right of way while she had a stop sign. Dr. Grafton further testified that Officer Bertucci's speed enforcement set up was not the cause of the accident because Ms. Garcia pulled out in front of Officer Bertucci when Officer Bertucci had the right to assume that traffic pulling out from the side streets would yield.

Considering Officer Bertucci had the right away, the trial court ultimately concluded that Ms. Garcia was solely at fault in causing this accident because "she failed to yield to oncoming traffic and drove directly into Officer Bertucci's path." As a result, the trial court allocated no fault to Officer Bertucci, ruled that the defendants had no liability to plaintiffs in this case, and dismissed plaintiffs' claims with prejudice.

This appeal followed.

**LAW and ANALYSIS**

It is well-settled that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Perez through Molina v. Gaudin, 17-211 (La. App. 5 Cir. 11/29/17), 232 So.3d 1271, 1273. Under

the manifest error standard, a determination of fact is entitled to great deference on review. Babin v. State Farm Mut. Auto. Ins. Co., 12-447 (La. App. 5 Cir. 3/13/13), 113 So.3d 251, 258, writ denied, 13-804 (La. 5/24/13), 117 So.3d 103, and writ denied, 13-808 (La. 5/24/13), 117 So.3d 104. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Perez through Molina, 232 So.3d at 1273. If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

In this appeal, plaintiffs assert that the trial court erred in applying the emergency response exception to this case and thereby applying a gross negligence standard; in allocating 100% fault to plaintiff Marta Garcia; in finding defendants were not at fault; and in not awarding plaintiffs any damages.

**The Emergency Response Exception**

We first address plaintiffs' assignment of error that the trial court erred in applying the emergency response exception in this case. This exception is set forth in La. R.S. 32:24, which provides:

> A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

> B. The driver or rider of an authorized emergency vehicle may do any of the following:

> (1) Park or stand, irrespective of the provisions of this Chapter.

> (2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.

> (3) Exceed the maximum speed limits so long as he does not endanger life or property.

> (4) Disregard regulations governing the direction of movement or turning in specified directions.

C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

The purpose of this statute is to provide a qualified statutory immunity from liability to drivers of emergency vehicles, under specific circumstances. Rabalais v. Nash, 06-0999 (La. 3/9/07), 952 So.2d 653, 662. In applying this exception, the Louisiana Supreme Court has also held that:

> If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."

Lenard v. Dilley, 01-1522 (La. 1/15/02), 805 So.2d 175, 180.

In this case, the trial court as the trier of fact found that the conditions of La. R.S. 32:24 A, B, and C were satisfied, and therefore the applicable standard of care was that of "reckless disregard" or "gross negligence." Based on the evidence and testimony presented at trial, the trial court found that Officer Bertucci was speeding because he was in pursuit of a violator of the law, specifically a speeding vehicle, and that he activated both his lights and sirens well before the accident.

Plaintiffs argue that the trial court erred in applying the emergency response exception in that the trial court did not consider whether Officer Bertucci endangered life or property when he exceeded the speed limit in violation of La. R.S. 32:24 B(3), which provides that an authorized emergency vehicle driver may "[e]xceed the maximum speed limits so long as he does not endanger life or property." Plaintiffs also argue the trial court did not consider whether his audible and visual signals were

sufficient to warn motorists of his approach as required by La. R.S. 32:24 C. Plaintiffs assert that the evidence at trial showed that Officer Bertucci endangered life or property when exceeding the speed limit and that his audible and visual signals were insufficient to warn motorists of his approach. Under La. R.S. 32:24, if these requirements are not satisfied, Officer Bertucci's conduct would be assessed under an ordinary negligence standard. Rabalais, 952 So.2d at 658.

La. R.S. 32:24 contains no affirmative requirement that the court's judgment use words that track the statute or specifically mention each condition of the statute. Taken as a whole, the trial court's findings show that the court heard and considered testimony as to whether Officer Bertucci endangered life or property when he exceeded the speed limit and whether his audible and visual signals were sufficient to warn motorists of his approach. The trial court's judgment also indicates that the court knew that La. R.S. 32:24 A, B, and C must be satisfied for the exception to apply. The court found that all elements were satisfied, that the exception applied, and that Ms. Garcia was "solely at fault in this accident because she failed to yield to oncoming traffic and drove directly into Officer Bertucci's path." Implicit in the trial court's findings, particularly the allocation of no fault to Officer Bertucci, is a finding that his actions did not endanger life or property.

The trial court considered other factors that relate to whether Officer Bertucci endangered life or property when he exceeded the speed limit. As to whether the traffic at the time of the accident made it unreasonably dangerous for Officer Bertucci to pursue a speeder, the trial court found that only one vehicle was on the roadway and that vehicle was already exiting the travel lanes at the time Officer Bertucci completed the U-turn and began accelerating westbound on West Napoleon Avenue after the speeding vehicle. The trial court further found that the weather was clear and the roadway was dry, and that there was no evidence suggesting

Officer Bertucci was distracted or unable to handle his vehicle at the speed it was traveling.

Upon review of the record, we find that the trial court considered the evidence and found that Officer Bertucci did not endanger life or property when he exceeded the speed limit, and that this finding is not manifestly erroneous or clearly wrong.

We also conclude that the trial court considered whether Officer Bertucci's signals were sufficient to warn motorists of his approach. The trial court specifically found that "[a]lthough Ms. Garcia testified that she did not see Officer Bertucci approaching, it is clear that the police unit was within her view." The trial court referred to testimony from witnesses who saw and/or heard his audible and/or visual signals, including Ms. Bremermann and Mr. McKnight. In addition, Officer Bertucci testified that he activated his lights and siren, and no one testified to the contrary. Given these facts, we cannot say the trial court's conclusion that Officer Bertucci's audible and visual signals were sufficient to warn motorists of his approach is manifestly erroneous or clearly wrong.

Considering the foregoing, the record supports a finding that the requirements of subsections A, B, and C of La. R.S. 32:24 were met in this case. At the time of the accident, Officer Bertucci was exceeding the speed limit because he was pursuing an actual violator of the law. His audible and visual signals were activated. In addition, he was not endangering life or property, and his signals were sufficient to warn motorists of his approach. Therefore the trial court correctly applied the "gross negligence" standard of care. Consequently, Officer Bertucci's conduct can only result in the imposition of liability if his actions constitute gross negligence.

**Gross Negligence**

Second, we consider plaintiffs' assertion that the trial court erred in finding that Officer Bertucci's actions did not constitute gross negligence. "Reckless disregard" is, in effect, "gross negligence." Rabalais, 952 So.2d at 658. Louisiana

courts have defined "gross negligence" as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." Rabalais, 952 So.2d at 658; Price v. Valenti, 13-822 (La. App. 5 Cir. 4/9/14), 140 So.3d 121, 124, writ denied, 14-0978 (La. 8/25/14), 147 So.3d 1120.

We also agree with the trial court's conclusion that Officer Bertucci's actions did not constitute "reckless disregard" or "gross negligence." As stated above, the evidence showed that Officer Bertucci activated his emergency signals, was pursuing an actual violator of the law, the weather was dry and clear, and the traffic was light. There was no evidence he could not handle his vehicle or was distracted from driving.

We cannot find that Officer Bertucci was grossly negligent in failing to anticipate that a driver, who was entering the roadway from a side street, would ignore (or fail to hear and see) his lights and siren, and proceed into the roadway in front of him without stopping or slowing down. La. R.S. 32:123 provides:

> Stop signs and yield signs; penalties for violations
>
> A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
>
> B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign **shall stop** before entering the crosswalk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway **where the driver has a view of approaching traffic** on the intersecting roadway **before entering the intersection**. After having stopped, the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard. [Emphasis added.]

In addition to imposing the duty to stop and yield the right of way, this statute specifically requires that the yielding driver stop where he or she has a view of approaching traffic before entering the intersection. The driver entering a highway has the primary duty to avoid a collision, which requires the entering driver to use every reasonable means available to make sure that he can safely enter the highway.

Griffin v. City of Monroe, 46,229 (La. App. 2 Cir. 4/13/11), 61 So.3d 846, 850. The driver must keep a lookout for vehicles on the highway and not enter until safe to do so. Id. A motorist has the right to assume that traffic will observe all of the duties imposed upon it by law and common sense, such as keeping a proper lookout. Breland v. Am. Ins. Co., 163 So.2d 583, 585 (La. App. 2 Cir. 1964), writ refused, 246 La. 379, 164 So.2d 362 (1964); see also Price, 140 So.3d at 125.

There is nothing in the record to indicate that Officer Bertucci's behavior constituted "reckless disregard for the safety of others," which would violate the duty imposed by La. R.S. 32:24 on drivers of emergency vehicles. Nor does the record indicate that Officer Bertucci acted without due regard for the safety of others.

Therefore, we do not conclude that the trial court's finding that Officer Bertucci's actions do not constitute gross negligence is manifestly erroneous.

**Allocation of Fault**

Third, we address plaintiffs' assertion that the trial court erred in finding Ms. Garcia solely at fault. The trier of fact is owed great deference in its allocation of fault, and its findings may not be reversed unless clearly wrong or manifestly erroneous. Willis v. Ochsner Clinic Found., 13-627 (La. App. 5 Cir. 4/23/14), 140 So.3d 338, 357. An appellate court's determination of whether the trier of fact was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), including whether the conduct was inadvertent or involved an awareness of the danger; how great a risk was created by the conduct; the significance of what was sought by the conduct, the capacities of the actors; and any extenuating factors which might require the actor to proceed with haste, without proper thought.

Drivers are required to yield the right of way upon the immediate approach of authorized emergency vehicles making use of audible or visual signals. La. R.S. 32:125 A. This duty arises when a motorist observes or hears, or under the

circumstances should have observed or heard, the audible or visual warnings. Griffin, 61 So.3d at 850. Jurisprudence indicates that stopping is only half the duty, the other half is not to proceed until the determining that the way is clear. Toston v. Pardon, 03-1747 (La. 4/23/04), 874 So.2d 791, 802. The second duty is heavier and requires an even greater degree of care when the intersection is blind, or partially obstructed. Id. After stopping, the motorist may not proceed until the way is clear. The stopped motorist must look for and evaluate oncoming traffic and look a second time before proceeding. Solomon v. Am. Nat. Prop. & Cas. Co., 49,981 (La. App. 2 Cir. 9/4/15), 175 So.3d 1024, 1027.

The trial court concluded that Ms. Garcia was solely at fault in causing this accident because even though Ms. Garcia testified that she did not see Officer Bertucci, he was clearly within her view, and she failed to fulfill her legal obligation to stop and wait until it was safe to proceed. A trial court's determination as to the credibility of witnesses is entitled to great deference. Korrapati v. Augustino Bros. Constr., LLC, 19-426 (La. App. 5 Cir. 7/31/20), 302 So.3d 147, 153. Based on the trial court's reasoning, the above law, and the record before us, we cannot say this allocation of fault is manifestly erroneous. We reiterate that despite Officer Bertucci's lights and siren, Ms. Garcia entered the roadway in front of him. We conclude that the trial court was not in error in finding that this does not warrant allocation of fault to him.

**DECREE**

For the foregoing reasons, we affirm the trial court's judgment, dismissing plaintiffs' claims against defendants with prejudice.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 22, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-CA-378**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
EVAN P. LESTELLE (APPELLANT)          RANDY J. UNGAR (APPELLANT)          TERRENCE J. LESTELLE (APPELLANT)
DEBORAH A. VILLIO (APPELLEE)          JAMES C. RAFF (APPELLEE)            MICHAEL L. FANTACI (APPELLEE)

**MAILED**
ANDREA S. LESTELLE (APPELLANT)
RICHARD M. MORGAIN (APPELLANT)
ATTORNEYS AT LAW
3421 NORTH CAUSEWAY BOULEVARD
SUITE 602
METAIRIE, LA 70002