# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 25, 2022

Lyle W. Cayce
Clerk

No. 21-30556

Anthony R. Efthemes,

*Plaintiff—Appellant*,

*versus*

Amguard Insurance Company; Apex Transit, L.L.C.;
Malik Aleem,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-1409

Before Clement, Graves, and Costa, *Circuit Judges*.
Per Curiam:[*]

A Louisiana state trooper severely injured his hand while deploying tire deflation devices to stop a high-speed chase. He brought a negligence action in Louisiana state court against a truck driver, the driver's former employer, and the employer's commercial liability insurer, alleging that the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30556

driver's negligence caused his hand injury.  The defendants removed the case to federal district court and filed a motion for summary judgment.

The district court granted the defendants' motion for summary judgment and dismissed the action with prejudice.  The plaintiff timely appealed.  We VACATE and REMAND for further proceedings.

I.

On May 19, 2018, there was a high-speed police chase in pursuit of a fleeing suspect traveling eastbound on I-10 in Calcasieu Parish.  Moving eastbound on I-10 at that same time was defendant Malik Aleem, who was driving a 79,000-pound tractor trailer.

Dashcam footage of the chase shows several squad cars—making use of their audible and visual signals—pursing the suspect vehicle from the rear in both the left and center lanes.[1]  At the 9:36 mark of the dashcam video, Mr. Aleem's truck comes into view, occupying the center lane at an undetermined distance ahead of the pursuit.  The pursuit closes in on Mr. Aleem's truck until about the 10:11 mark, at which point Mr. Aleem yields the right-of-way by transitioning his truck into the right lane and beginning to brake.

Just up ahead near milepost 19, two Louisiana State Troopers—Randy Walters and plaintiff Anthony Efthemes—had parked their squad cars on the north and south shoulders of I-10 E, respectively.  They exited their vehicles and prepared to set up tire deflation devices—called Stop Sticks—to bring the pursuit to an end.[2]

---

[1] The dashcam footage can be found at
https://www.youtube.com/watch?v=vGKn2LZe_8U.

[2] A Stop Stick device consists of three nylon bags that are connected to each other. Inside of each bag is a set of spikes.  The bags are attached to a reel enclosing a spool of

No. 21-30556

As the police pursuit and Mr. Aleem's truck approached the location where Troopers Walters and Efthemes were parked, Troopers Walters and Efthemes each deployed a set of Stop Sticks—one from either side of the highway.[3] The Stop Sticks punctured the suspect vehicle's tires. Very shortly thereafter, as Trooper Efthemes was pulling his set of Stop Sticks towards him to get them off the highway, Mr. Aleem's truck hit Trooper Efthemes' Stop Sticks.

According to Trooper Efthemes' expert, when Mr. Aleem's truck hit Trooper Efthemes' Stop Sticks, it "kicked [the Stop Sticks] up in the air," causing slack in the line. Then, when the Stop Sticks fell back down toward the ground, the line wrapped around Trooper Efthemes' finger and the slack tightened. This severely injured Trooper Efthemes' finger.

In May 2019, Trooper Efthemes brought a negligence action against Amguard Insurance Co.; Apex Transit, LLC; and Mr. Aleem in Louisiana state court. Apex Transit was Mr. Aleem's employer at the time of the incident, and Amguard is its commercial liability insurer. The defendants timely removed the action to the United States District Court for the Western District of Louisiana.

The district court granted summary judgment in the defendants' favor, determining that there was no genuine issue of material fact as to

---

string. The purpose of the reel is to enable the operator of the Stop Sticks to place the nylon bags on one side of a road, set the enclosed line of string across the road, and then stand on the opposite side of the road. Then, when a target vehicle approaches, the operator can use the handle of the reel to pull the bags into the road and in front of the target vehicle.

Troopers Walters and Efthemes were trained to use Stop Sticks. Instead of using their hand to pull the Stop Sticks toward them, they were trained to "take off running" with the handle so that the line always remained taut.

[3] The bodycam footage can be found at https://www.youtube.com/watch?v=byllDaQb-Q0.

No. 21-30556

whether Mr. Aleem's alleged negligence caused Trooper Efthemes' injury. *Efthemes v. Amguard Ins.*, No. 2:19-CV-01409, 2021 WL 3559684, at *3 (W.D. La. Aug. 11, 2021). It accordingly dismissed the action with prejudice. *Id.*; Trooper Efthemes timely appealed.

## II.

We review a district court's order granting a motion for summary judgment de novo, applying the same standard as the district court. *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material if it "might affect the outcome of the suit under the governing law[.]" *Hyatt*, 843 F.3d at 177 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "We construe all facts and inferences in the light most favorable to the nonmoving party[.]" *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III.

The only question on appeal is whether the district court erred by granting summary judgment in the defendants' favor with respect to Trooper Efthemes' negligence claim. Under Louisiana law, to prevail on a negligence claim, a plaintiff must prove the following elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

No. 21-30556

*Rando v. Anco Insulations Inc.*, 2008-1163, p. 26–27 (La. 5/22/09); 16 So. 3d 1065, 1086 (citing *Davis v. Witt*, 02–3102, p. 11 (La. 7/2/03); 851 So. 2d 1119, 1127).

Before the district court, the defendants disputed only the second, third, and fourth elements. *See Efthemes*, 2021 WL 3559684, at *2. Without deciding whether Mr. Aleem breached a duty owed to Trooper Efthemes, the district court held that Trooper Efthemes failed to present sufficient summary judgment evidence "in satisfaction of the causation element." *Id.* at *3. Specifically, it held that there was "no evidence to show that changing lanes a few seconds earlier would have given Aleem sufficient time to stop his vehicle before hitting the stop sticks or Efthemes time to move them out of the way." *Id.* We disagree.

### A.

The Louisiana State Code provides the duty of a motorist in the presence of emergency vehicles:

> Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

LA. STAT. ANN. § 32:125(A). "This duty arises when a motorist observes or hears, or under the circumstances *should have observed or heard*, the audible or visual warnings." *Griffin v. City of Monroe*, 46,229, p. 5 (La. App. 2 Cir. 4/13/11); 61 So. 3d 846, 850 (emphasis added).

Neither party disputes that Mr. Aleem was driving in the center lane when the police pursuit approached his truck from the rear. It is clear from the dashcam video that he stayed in the center lane for around 35 seconds as the police pursuit gained on him. Moreover, he testified at his deposition that he "checked [his] mirrors and that's when [he] saw them gaining up on [him]." Even still, he testified, he "maintained the middle lane."

In view of motorists' statutory duty to *immediately* yield the right-of-way upon the approach of an authorized emergency vehicle and begin braking, a reasonable jury could find that Mr. Aleem breached his duty by not changing lanes and braking sooner than he did. Notably, he did not testify that he was unable to immediately switch lanes or begin slowing down. Nor did he testify that he could not hear the police sirens, or that he did not see the police pursuit gaining on him. And even if he had so testified, the question remains regarding what he *should have* done, heard, or observed. *See Griffin*, 61 So. 3d at 850; *Anderson v. Metro. Prop. & Cas. Ins.*, 2004-717, p. 5 (La. App. 3 Cir. 12/8/04); 890 So. 2d 677, 680 ("The statute does not allow the driver any leeway to ponder, to size up the situation, and to then select the best place to pull off the road.").

Accordingly, the evidence raises a genuine issue of material fact as to whether Mr. Aleem breached his duty to Trooper Efthemes.

## B.

The evidence also raises a genuine issue of material fact as to whether Mr. Aleem's breach was the cause-in-fact of Trooper Efthemes' injuries. To establish cause-in-fact, Trooper Efthemes must prove that his injuries "would not have occurred but for [Mr. Aleem's] substandard conduct." *Bonin v. Ferrellgas, Inc.*, 2003-3024, p. 6 (La. 7/2/04); 877 So. 2d 89, 94. "However, where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing

about the accident." *Id.* The parties appear to disagree over which causation standard applies.

Trooper Efthemes argues that but for Mr. Aleem's failure to yield the right-of-way and begin braking sooner, he would have been able to slow down sufficiently so as to avoid hitting the Stop Sticks. Whereas Mr. Aleem argues that a second, more substantial factor contributed to causing Trooper Efthemes' injury—principally, Trooper Efthemes' own failure to deploy the Stop Sticks properly.

But-for causation applies here. Mr. Aleem's argument for substantial factor causation depends entirely on his theory that Trooper Efthemes was negligent in deploying the Stop Sticks. But, as Trooper Efthemes points out, there is competent summary judgment evidence in the record that cuts against that theory and suggests that Trooper Efthemes deployed the Stop Sticks properly. And at this stage, the court must view the evidence in the light most favorable to Trooper Efthemes. *See Dillon*, 596 F.3d at 266. Assuming that Trooper Efthemes deployed the Stop Sticks properly, there is no factor that either party alleges caused Trooper Efthemes' injuries other than Mr. Aleem's breach of duty. Thus, we apply but-for causation. *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991), *on reh'g* (May 28, 1992) (explaining that "[c]ause in fact is generally a 'but for' inquiry" unless "multiple causes are present").

Turning to the evidence, Mr. Aleem's best defense comes from a report prepared by an accident reconstruction expert. The report contains a forensic frame-by-frame analysis of the bodycam and dashcam footage, which attempts to compute the speed at which Mr. Aleem's vehicle was traveling. Based on when Mr. Aleem yielded the right-of-way and began to brake in relation to when Trooper Efthemes deployed the Stop Sticks, the report concluded that "[i]t was absolutely impossible for the tractor trailer to avoid

the stop sticks[.]"  Moreover, it concluded that "[t]here was no avoidance path available when the sticks were deployed as the tractor trailer could not utilize the right shoulder due to the presence of the Chevrolet Tahoe patrol vehicle and a trooper on foot, nor could it move left due to emergency vehicles being present."  Mr. Aleem offered the report to show that he simply could not have slowed down at a faster rate or otherwise avoided the Stop Sticks without causing a bigger accident.

The problem with this evidence is that the report calculated Mr. Aleem's speed, and the corresponding time it would have taken him to stop, based on when Mr. Aleem transitioned to the right lane.  It did *not* consider or calculate whether Mr. Aleem would have been able to slow down sufficiently to avoid the Stop Sticks had he transitioned to the right lane and began braking *earlier*.  In other words, Mr. Aleem's report is flawed because it assumes no breach.  The report is of little use in determining what would—or might—have happened had Mr. Aleem given himself more time and distance to brake.

Mr. Aleem also argues that Trooper Efthemes has no evidence to support his claim that Mr. Aleem's breach caused his injuries.  That is wrong.  Trooper Efthemes has the most telling evidence of all—footage of the accident.  It is abundantly clear from the dashcam footage that Mr. Aleem's truck hit the Stop Sticks *right* as Trooper Efthemes was pulling them off the road.  As a matter of mathematics and common sense, braking over a longer distance and for a longer duration increases the time it takes to arrive at a given destination.  Had Mr. Aleem changed lanes and began braking earlier, the Stop Sticks may well have been off the road by the time his truck got there.

Given that a reasonable jury could find that Mr. Aleem breached his duty, the question becomes: could a reasonable jury conclude that Mr. Aleem

would have been able to slow down sufficiently to avoid hitting the Stop Sticks had he yielded the right-of-way and began breaking sooner?  We think so.

## C.

That brings us to two disputed issues that the district court did not reach: (1) Whether the risk of harm that befell Trooper Efthemes falls within the scope of the duty imposed by § 32:125(A); and (2) Whether the professional rescuer's doctrine precludes recovery.  We decline to resolve these questions because, "as a 'general rule,' we do 'not consider an issue not passed upon below.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014)).  We are a "court of review, not first view." *United States v. Houston*, 792 F.3d 663, 669 (5th Cir. 2015).  Accordingly, we remand for the district court to address these issues in the first instance.

## IV.

For the foregoing reasons, we VACATE the judgment and the grant of summary judgment, and we REMAND the case for further proceedings consistent with this opinion.